UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOYCE KUMASI                                                CIVIL ACTION

VERSUS

UNKNOWN COCHRAN, ET AL.                       NO. 13-00489-BAJ-SCR

## RULING AND ORDER

Before the Court is Defendants' **Motion for Summary Judgment (Doc. 22)** filed by Unknown Officer/Guard and Lt. Cochran ("Defendants")[1], pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Plaintiff Joyce Kumasi's ("Kumasi") claims. Kumasi opposes the motion. (Doc. 24). Defendants filed a supplemental memorandum and exhibit in support of their motion to which Kumasi also responded. (Docs. 29, 31). Oral was held on April 23, 2015. (Doc. 51). The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.   BACKGROUND

On July 26, 2012, at approximately 3:20 p.m., Master Sergeant Julian McCoy was making his rounds when he observed inmate Ronald Gardley ("Gardley) to be unresponsive.[2] (Doc. 24-1 at ¶ 1). The parties dispute the length of time it took for medical assistance to be summoned, but agree that eventually EMT Sergeant

---

[1] Defendants' motion makes it appear as though Unknown Officer and Guard Lt. Cochran are the same person, but uses both the plural and singular version of the term "defendant." Because the Complaint suggests that there are two separate defendants, the Court will use the term "Defendants." (Doc. 1 at ¶ 4).

[2] The parties dispute the timing and circumstances surrounding the discovery of Gardley as unresponsive.

Christopher Eaves arrived to assess Gardley's condition. (*Id.* at ¶¶ 2-3). Resuscitative measures were administered by Elayn Hunt Correctional Center ("Hunt") medical personnel in an attempt to save Gardley's life.[3] (*Id.* at ¶ 5). However, Gardley was pronounced dead at 4:12 p.m. on July 26, 2012. (*Id.* at ¶ 6). The parties agree that no guards at Hunt applied direct physical force upon Gardley on the date he died, except to administer life saving measures. (*Id.* at ¶¶ 7-8).[4] The parties dispute the adequacy of the medical treatment provided to Gardley as well as the cause of Gardley's death.[5] (*Id.* at ¶¶ 9-11).

On July 26, 2013, Gardley's mother, Kumasi, filed the instant wrongful death and survival action pursuant to 42 U.S.C. § 1983 and Louisiana Civil Code Articles 2315.1 and 2315.2. (Doc. 1).

On December 2, 2014, Defendants filed a Motion for Summary Judgment (Doc. 22), seeking dismissal of the instant action on the ground that there is no genuine dispute of material fact that Kumasi was not the proper party to bring the instant action because Gardley had a son. (Doc. 22). Kumasi filed a memorandum in opposition, and a Motion to Continue Trial and for Issuance of Subpoena Duces

---

[3] The parties dispute whether Gardley was still alive when Hunt staff began administering life saving measures. (24-1 at ¶ 4).

[4] The parties dispute whether Hunt staff addressed Gardley's medical needs when they were first notified that he was unable to breathe. (24-1 at ¶ 7; 26-3 at p. 1).

[5] Defendants assert that neither Gardley's medical records or the Iberville Parish Coroner's Report evidence an exposure to chemical agents on the date of his death, or that chemical agents were the cause of his death. However, neither Gardley's medical records, nor a copy of the Coroner's Report were submitted to the Court in connection with this motion. Plaintiff also disputes that there is no indication that Gardley died as a result of chemical overdoes, foul play, or disguised suffocation. Plaintiff directs this Court's attention to a pathologist report by Richard Tracy, M.D., but the Court was not provided a copy of this report by either party.

Tecum, seeking an order from this Court issuing a subpoena for information leading to the whereabouts of Gardley's minor son. (Docs. 24, 32).

On April 23, 2015, the Court heard the motions with oral argument and took the matter under advisement. (Doc. 51). On April 28, 2015, the Court denied Kumasi's motion and ordered that Kumasi undertake all reasonable efforts to locate Gardley's child, the child's mother or the child's legal guardian independently. On June 12, 2015, Kumasi supplemented her filings with a Status Report. (Doc. 55). In the report, Kumasi notified the Court that she located Gardley's son, Danes. (Doc. 55-3). Counsel for Kumasi, Donna Grodner, further informed the Court that Danes signed a contract with her on June 12, 2015. (Doc. 55-3 at p. 2). Though Danes will not reach the age of majority until next month, and does not currently have a "legal tutrix," he indicated a desire to be "substituted and/or join the lawsuit that his grandmother filed." (*Id.*). Accordingly, the question remaining is whether Danes may be substituted in at this time.

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that

the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

Because Congress did not establish a statute of limitations applicable to § 1983 actions, federal district courts must "borrow" state laws of limitations governing analogous state causes of actions. *Board of Regents v. Tomanio*, 446 U.S. 478, 483–85 (1980) (citing 42 U.S.C. § 1988 and numerous cases). Specifically, courts must apply the state statute of limitations for personal injury cases. *See Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985) (Section "1983 claims are best characterized as personal injury actions"); *Gates v. Spinks*, 771 F.2d 916, 919 (5th

Cir. 1985) ("the state statute governing the general tort remedy for personal injuries should apply to 1983 actions").

In Louisiana, Louisiana Civil Code Article 2315 sets forth the recovery scheme for wrongful death and survival actions in Louisiana. The Code provision does not state the period of limitations for a wrongful death action. Instead, the applicable limitations period, one year from the date of death, is the general one-year prescription rule for delictual actions under Civil Code Article 3492. Accordingly, under Louisiana law, one must bring a wrongful death or survival action within one year of the alleged victim's death unless the limitations period is interrupted. *Ayo v. Johns-Manville Sales Corp.*, 771 F.2d 902, 906 (5th Cir. 1985).

Here, Defendants assert that summary judgment is proper because Kumasi is not the proper party to bring this action, and thus, "does not have the right to enforce a claim for survival or wrongful death under Louisiana law." (Doc. 22-2 at p. 3). More specifically, Defendants aver that because Gardley was survived by a child, the Louisiana Civil Code bars Kumasi's right to bring a survival or wrongful death action. (Doc. 22-1 at p. 5). *See* La. Civ. Code art. 2315.1, 2315.2. In support, Defendants submit a Judgment of Paternity, which was obtained against the decedent, Ronald Gardley, and legally establishes his paternity of Gideon Danes ("Danes").[6] (Doc. 29-2). Kumasi does not dispute that the one-year prescriptive

---

[6] The Judgment of Paternity was issued by Division B of the Family Court of East Baton Rouge Parish on November 25, 1998 in Case Number 127,093. (Doc. 29-2).

period applies to her § 1983 claims or that Gardley was survived by a son.[7] (Doc. 31-1). However, Kumasi suggests that the prescriptive period was tolled by the filing of the instant action, and therefore, the Court should permit an amendment to the original complaint adding Gardley's son as a co-plaintiff. (Doc. 31-1 at p. 2).

"As a threshold matter, any party bringing suit must have standing to do so, and the [United States Court of Appeals for the] Fifth Circuit has instructed district courts to evaluate state law concepts of paternity to establish standing in wrongful death and survivorship actions." *Howell v. Hillcorp Energy Co.*, No. 12-0293, 2013 WL 1455758, *3 (E.D. La. 2013); *see also Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988.") (citations omitted).

Under Louisiana Civil Code Articles 2315.1 and 2315.2, the right of a survival or wrongful death action is afforded to four exclusive categories of survivors in those articles. However, the statutes do not allow for all of the classes of survivors to bring actions. The existence of a person qualifying within a higher class prevents a person in a lower class from filing suit. The primary category under both 2315.1 and 2315.2 includes the surviving spouse and/or children of the decedent. Thus, pursuant to Articles 2315.1 and 2315.2, a surviving mother or

---

[7] In her initial opposition, Plaintiff did contest that her son had a child. (Doc. 24 at p. 5). Having received a copy of the Judgment of Paternity, Plaintiff now appears to concede the existence of her grandson. (Doc. 31).

father may only recover in the event that the decent was not survived by a spouse or child.

Here, Kumasi now concedes that she was not the proper party to bring this action; however, she suggests that substituting Gardley's son into this action is proper under Federal Rule of Civil Procedure 15.[8] (Doc. 31-3 at p. 2). For reasons different than those offered by Kumasi, the Court agrees.

In *Sam v. Sorrel Electrical Contractors, Inc.*, 525 So.2d 244 (La. Ct. App. 1st Cir. 1988), *writ denied*, 532 So.2d 133 (La. 1988), the Louisiana First Circuit Court of Appeal held that "a petition setting forth a valid cause of action timely filed by one who has no right of action nevertheless interrupts prescription in favor of a proper plaintiff." *Id.* at 246. Like the instant matter, *Sam* involved a wrongful death and survival action brought by the decedent's mother. Ultimately, the mother's claim was dismissed on an exception of no right of action, but the court found that her claim interrupted the one-year prescriptive period on behalf of the decedent's child. *Id.* In so finding, the Court relied on the four factors established by the Louisiana Supreme Court in *Giroir v. South Louisiana Medical Center, Division of Hospitals*, 475 So.2d 1040 (La. 1985). *Id.* Specifically, the *Giror* Court

---

[8] In support of this proposition, Plaintiff cites several cases that are inapplicable to the instant matter. First, Plaintiff cites *Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995), but misstates the holding. Contrary to Plaintiff's assertions, the court in *Nelson* did not allow the amending of a complaint to add additional plaintiffs, even though the plaintiffs' claims were related to the original pleading because plaintiffs were aware of their right to file the claims, but failed to do so in a timely manner. *Id.* at 1015 ("Although the relation-back rule ameliorates the effect of statutes of limitations, 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1497, it does not save the claims of complainants who have sat on their rights."). Plaintiff then cites *Williams v. United States*, 405 F.2d 234 (5th Cir. 1968), which involved claims filed under the Federal Tort Claims Act, and facts not analogous to the instant case. Finally, Plaintiff cites *Pappion v. Dow Chemical Co.*, 627 F. Supp. 1576 (W.D. La. Feb. 21, 1986), which addressed the relation back of claims in a traditional diversity action, which is similarly inapplicable.

held that an amendment adding or substituting a plaintiff should be allowed to related back if:

> (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading;
>
> (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff;
>
> (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated;
>
> (4) the defendant will not be prejudiced in preparing and conducting his defense.

*Id.*[9] The Court finds these factors also warrant substitution in the instant case.

First, Danes's claims clearly arise out of the same conduct, transaction, or occurrence as alleged by Kumasi in her Complaint. The crux of this lawsuit is the circumstances surrounding Gardley's death while in the custody of the Louisiana Department of Corrections. Substituting Gardley's son in for his mother does not alter the nature of the claims. Indeed, the only difference between Danes serving as the plaintiff as compared to Kumasi lies in the possible damages to be awarded, if the claims are proven; the claims are otherwise identical. Thus, the Court finds that this factor weighs in favor of substitution.

Second, the Court finds that Defendants knew or should have known of the existence of the new plaintiff. Kumasi maintains that she was not aware of the existence of her grandson, and stated as much in her Complaint. (Doc. 1 at ¶ 3). By contrast, Defendants were on notice of the existence of Gardley's son while he was

---

[9] The Court notes that the added plaintiffs in *Giroir* (children) were part of the same class of beneficiaries as the plaintiff in original petition (surviving spouse). *Giror*, 475 So.2d at 1041. The Court nonetheless finds the reasoning of *Giror* equally applicable to the instant case.

8

in the custody of the Department of Corrections. (Doc. 23-1 at p. 17). Indeed, Elayn Hunt Correctional Center's own paperwork provided the basis for the filing of the instant motion. (*Id.*). Yet, even though Defendants aver that Kumasi had been on notice since the filing of their answer that Gardley had a son, no definitive proof of biological filiation was presented until March of 2015. (Doc. 29-2). Further, despite allegedly knowing that Kumasi was not the proper party at the time of filing their answer, Defendants waited 435 days before filing the instant motion for summary judgment. (*See* Docs. 20, 22). Accordingly, the Court finds that this factor also weighs in favor of substitution.

Third, as stated previously, the difference between a decedent's mother and a decedent's son suing is relatively inconsequential such that substituting Danes in at this stage cannot be said to be wholly new or unrelated. Further, the Court finds that this factor is heavily connected to the remaining factor – prejudice to the defendants in preparing and conducting their defense. Despite Defendants' assertion at oral argument that they would be prejudiced by incurring the cost of "starting anew," the Court is unpersuaded by this argument. Discovery was completed in this matter prior to Defendants' filing the instant motion. (*See* Docs. 12, 28). Thus, the substantive evidence regarding Kumasi's claims and Defendants' defenses has already been gathered and exchanged to the extent required. The only issue presented by substituting Danes in for Kumasi is the possibility of additional or alternative damages, which should require minimal, if any, additional discovery. Though the Court will not speculate as to the merits of the underlying claims, or the

amount of damages that should be awarded if such claims are proven, it is worth noting that at oral argument, Defendants questioned the type or amount of damages a son who seemingly had no relationship with his father could prove. That Defendants have taken such a position only serves to further underscore the lack of prejudice suffered by the Court's granting the instant substitution. Accordingly, the Court finds that the remaining factors also weigh in favor of substitution.

The Court notes that this case presents a close call, but equity compels this conclusion. By their own admission, Defendants had information in their possession notifying them of the likely existence of Gardley's son. Despite this, the Department of Corrections undertook no efforts to ensure Danes was notified of his father's death, let alone timely notified. At oral argument, Defendants could offer no justification for their failure to do so. Instead, they argued that they were unaware of any policy requiring any action beyond notifying the party listed as next of kin by the offender – here, Kumasi. Thus, having notified Kumasi, Defendants did not feel obligated to notify any additional surviving family members. Nevertheless, once pressed to properly support the instant attempt to dismiss this litigation, Defendants appear to have found Danes with relative ease. Even armed with this information, Defendants still made no effort to inform Danes directly about his father's death. The Court is unaware of what, if any, policies the Department of Corrections has enacted to govern procedures in the event of an inmate death, as the parties did not raise the issue, but should those policies actually sanction such apathy, the Court finds it deeply troubling.

IV. CONCLUSION

**IT IS ORDERED** that Defendants' **Motion for Summary Judgment** (Doc. 22) is **DENIED**.

**IT IS FURTHER ORDERED** that the following deadlines are **RESET**:

- The parties shall submit a revised final pretrial order on or before **September 1, 2015**.

- Motions in limine shall be filed on or before **September 7, 2015**.

- A final pretrial conference will be held in Chambers on **September 15, 2015, at 2:00 p.m.**.

- Proposed voir dire questions, jury charges, jury interrogatories (verdict form) and bench book[10] shall be submitted on or before **September 22, 2015**.

- Jury trial of this matter shall be held on **October 5 – October 7, 2015, at 8:30 a.m.** in Courtroom 2 before Chief Judge Brian A. Jackson.

Baton Rouge, Louisiana, this 17th day of July, 2015.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[10] Counsel are directed to consult Local Civil Rule 79, which recently modified the procedure relating to the submission and custody of exhibits.